UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
(ORLANDO DIVISION)

| | |
|---|---|
| MANUEL NAVARRO, | ) Civil Action No. 6:25-cv-1328 |
|     Plaintiff, | ) |
| v. | ) |
| CITY OF ORLANDO, FLORIDA | ) |
|     Defendant. | ) |

## COMPLAINT

Plaintiff Manuel Navarro files this Complaint against Defendant City of Orlando, Florida ("Orlando") and in support states the following:

## PARTIES

1. Plaintiff Manuel Navarro is an adult individual who currently resides in Colorado Springs, Colorado.

2. Defendant Orlando is a municipality organized under the laws of the State of Florida, with its principal place of business located at 400 South Orange Avenue, Orlando, Florida 32801.

3. Defendant Orlando operates the Orlando Fire Department ("OFD") and is responsible for the policies, practices, and customs of the OFD. As a municipal employer, Defendant Orlando is also responsible for the acts of all its employees while acting within the scope of their employment, which includes

employees of the OFD. At all times relevant, Defendant Orlando continuously employed more than 15 employees and was a covered employer as defined by Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 2000e *et seq*.).

## JURISDICTION AND VENUE

4.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that Plaintiff's claims arise under the laws of the United States and Plaintiffs seek redress for violations of federal laws.

5.  Venue is proper in this district pursuant to 28 U.S.C. § 1391, as Defendant is located within the Middle District of Florida and a substantial part of the events and omissions giving rise to this action occurred within the Middle District of Florida.

## FACTUAL BACKGROUND

**A.**  **Defendant's Recruitment of Navarro**

6.  Navarro has over fifty years of experience working within and leading fire departments around the country. Navarro's experience includes 22 years with the Oakland Fire Department, 14 years with the Colorado Springs Fire Department, and over 12 years with the Menlo Park Fire Protection District. Within those fire departments, Navarro held leadership positions, which included serving in the roles of Assistant Chief, Deputy Chief, and Fire Chief.

7. In October 2022, Charlie Salazar, Fire Chief of the OFD, reached out to Navarro to discuss a role within the OFD. Specifically, Chief Salazar wanted Navarro to serve in a senior leadership role within the OFD so that he could mentor OFD officers, assist with the management of OFD personnel, and help improve the day-to-day operations of OFD.

8. Chief Salazar and Navarro eventually discussed and agreed that Navarro would serve as Executive Deputy Chief of the OFD.

9. On November 4, 2022, Defendant made an offer of employment to Navarro to serve as a Deputy Fire Chief within the OFD for a 2-year period. Defendant's offer was contingent upon Navarro executing an employment contract with OFD.

10. On December 5, 2022, Navarro and Defendant entered into an employment contract ("Navarro Contract") for the Deputy Fire Chief position. The terms of the Navarro Contract specified a 2-year period of employment (January 3, 2023 through January 2, 2025), annual salary of $162,523.20, and additional benefits for Navarro. The Navarro Contract also specified that Navarro's job duties could only be changed "by the mutual consent of the City and [Navarro]."

B. **Navarro and the OFD Executive Team**

11. On January 3, 2023, Navarro began his employment with OFD.

3

12. OFD is a department within the City of Orlando, and the leadership of the OFD in 2023 was controlled by the following individuals: Chief Salazar, Executive Deputy Chief Kevin Preston, Deputy Chief Craig Hulette, and Deputy Chief Ian Davis (collectively the "OFD Executive Team").

13. Defendant provided the OFD Executive Team with policymaking authority concerning the day-to-day operations of the OFD. In addition, Defendant authorized and permitted the OFD Executive Team to make decisions which impacted the terms and conditions of employment for OFD employees.

14. In January 2023, Navarro was told that he was no longer going to serve as the Executive Deputy Fire Chief for the OFD. Instead, Navarro was designated as the Deputy Chief of Administrative Services for the OFD. This change in title and accompanying responsibilities was unilaterally made by Defendant through the OFD Executive Team.

15. As Deputy Chief of Administrative Services, Navarro was assigned the responsibility of managing and overseeing the following divisions within the OFD: Diversity, Equity and Inclusion; Facilities; Information Technology; and Professional Development.

16. As Deputy Chief of Administrative Services, Navarro regularly attended meetings with the OFD Executive Team and other OFD leaders ("OFD Executive Meetings").

17. Within the first few months of his tenure as Deputy Chief of Administrative Services, Navarro quickly identified numerous issues within the OFD which he pointed out to Chief Salazar and other members of the OFD Executive Team. Among the issues Navarro identified and sought to resolve within the OFD were,

    a. Dangerous working conditions within OFD's fire stations which included mold issues, rodent infestation, and lack of air conditioning;

    b. OFD's failure to complete the Fire Station Alerting System;

    c. Lack of mentorship and peer support programs for OFD employees;

    d. OFD's failure to provide regular reports to the City's administration, including the Mayor's Office, concerning OFD's operations, D.E.I. efforts, and compliance with federal law;

    e. Lack of specific and executable work plans throughout OFD's departments;

    f. Lack of oversight to the OFD's Training Plan for OFD's sworn personnel to ensure ISO compliance and compliance with other accreditation standards;

18. After identifying these issues to Chief Salazar and other members of the OFD Executive Team, the OFD Executive Team began to exclude Navarro from attending OFD Executive Meetings.

19. The OFD Executive Team also attempted to undermine Navarro's authority within the OFD by purposefully limiting the information Navarro

would receive, directing Navarro's subordinates to complete tasks he was responsible for, and disparaging Navarro within OFD's leadership ranks.

20. Despite these obstacles, Navarro performed all the essential duties of his job, and he performed them well.

### C. Navarro's Opposition to Defendant's Retaliation against DC Baussan

21. Alissa Baussan is a District Chief with the OFD and was assigned to the OFD's D.E.I. Division when Navarro was Deputy Chief of Administrative Services.

22. In March 2023, when Navarro was travelling back from a trip to Miami, Florida, with the OFD Executive Team, members of the OFD Executive Team began discussing Baussan. During this discussion, the OFD Executive Team disparaged Baussan by questioning her commitment to the OFD, claiming that she had job performance issues, and stating that Baussan had attendance-related issues. During this discussion, Navarro advised the OFD Executive Team to meet with Baussan to discuss these alleged issues before things got out of hand.

23. When Navarro returned from his Miami trip, he reviewed the allegations the OFD Executive Team were making against Baussan and discovered that Baussan had made valid requests for disability-related accommodations pursuant to OFD's policies. In addition, Baussan's disability-related accommodations had been previously approved by Defendant.

24. Navarro discussed these alleged work-related issues with Baussan's immediate supervisor, Assistant Chief Adrian Fernandez, and urged him to convince Chief Salazar to meet with Baussan to diffuse this issue. When Navarro later spoke with Assistant Chief Fernandez, he stated that he discussed Baussan's request for a meeting with Deputy Chief Preston who told him that "nobody gets to meet with the king."

25. Thereafter, it appeared as if Defendant engaged in a series of retaliatory acts against Baussan for seeking accommodations for her disability, which included Defendant taking away Baussan's job responsibilities, denying Baussan the same training benefits other District Chiefs were afforded, transferring Baussan to a position that would interfere with her existing, disability-related accommodations, and conducting a formal audit of all of Baussan's time and attendance records.

26. Navarro told Assistant Chief Fernandez and other members of the OFD Executive Team that Defendant's recent actions against Baussan, which included the audit of Baussan's time and attendance records, was something that no other OFD employee had been subjected to and was retaliation.

27. Chief Salazar then called Navarro into a meeting to discuss the claims of retaliation Navarro had made against Defendant concerning Baussan. During this meeting, Navarro reiterated that he believed that Defendant's actions against

Baussan were retaliatory. In response, Chief Salazar specifically stated that Defendant's audit of Baussan's time and attendance records was not retaliation and ordered Navarro to meet with Baussan and tell her that.

28. Navarro did meet with Baussan and relayed Chief Salazar's message. Shortly thereafter, on October 13, 2023, Defendant notified Navarro that it intended to terminate Navarro's employment and was providing this notice pursuant to the terms of the Navarro Contract.

29. Defendant then ordered Navarro to not report to the office or any OFD site, prohibited him from communicating with any OFD employees, and took away his work-issued car, computer and cellphone.

30. Navarro's employment with Defendant ended on November 25, 2023.

31. By terminating Navarro's employment, Defendant failed to follow its own written policies and practices concerning retaliation against employees in the workplace.

32. The stated reasons for the termination of Navarro's employment were pretext as Navarro's firing was in retaliation for him uncovering and speaking out against Defendant's retaliatory behavior against District Chief Baussan after she asserted her rights under the Americans with Disabilities Act ("ADA") and Title VII.

33. It is believed that Defendant acted willfully and in reckless disregard of Navarro's rights under Title VII when it terminated his employment soon after he uncovered and spoke out against Defendant's retaliatory behavior against District Chief Baussan, in violation of the ADA and Title VII.

### D.  Plaintiff's Exhaustion of his Administrative Remedies

34. On February 3, 2024, Navarro dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against the City of Orlando.

35. Plaintiff's Charge of Discrimination was dual-filed with the Florida Commission on Human Relations against the City of Orlando.

36. On March 20, 2025, the EEOC referred Navarro's Charge of Discrimination to the United States Department of Justice ("DOJ").

37. On April 21, 2025, the DOJ notified Navarro of his right to file a civil action against the City of Orlando.

38. Navarro has initiated this action within 90 days of receiving his Right to Sue letter.

39. For all applicable claims, Navarro has exhausted his administrative remedies under federal law.

## STATEMENT OF CLAIMS

### COUNT I

## Violations of Title VII

40. Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 39, as if fully set forth herein.

41. As noted above, when Navarro heard the disparaging comments the OFD Executive Team made against Baussan, he investigated these claims by reviewing Baussan's accommodation requests, Defendant's policies concerning workplace accommodations, and spoke with Baussan's immediate supervisor to determine if there was any merit to Defendant's claims against Baussan.

42. During Navarro's investigation, he discovered that Baussan had followed Defendant's policies concerning accommodations in the workplace and that Baussan had made valid accommodation workplace requests to the City under federal and state laws. Navarro also discovered that in response to Baussan's accommodation requests, Defendant had illegally denied and/or interfered with Baussan's accommodation requests and subjected her to a series of harassing, discriminatory, and retaliatory acts.

43. Navarro opposed Defendant's harassing, discriminatory, and retaliatory acts by notifying the OFD Executive Team that they were breaking the law, stating that he opposed Defendant's illegal mistreatment of Baussan, and attempted to broker a meeting that would facilitate the resolution of Baussan's claims against Defendant.

44. In response, Defendant terminated Navarro's employment.

45. The acts and omissions by Defendant that are described in this Complaint constitute claims for retaliation in violation of Title VII.

46. AS a proximate result of Defendant's actions, Navarro has or will suffer substantial harm, for which Navarro seeks general, compensatory, consequential, and punitive damages (if permitted).

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and applicable law, all Plaintiffs hereby demand that their claims be tried before a jury.

## REQUESTS FOR RELIEF

Accordingly, Plaintiff request that this Court enter judgment on his behalf and enter an order directing the award of other relief, as follows:

A. Finding that Defendant violated Title VII;

B. Awarding Navarro back pay, front pay, lost benefits, and other emoluments of employment and such other relief as is necessary to make him whole;

C. Awarding Navarro compensatory damages for pain, suffering, and damage to reputation;

D. Awarding Navarro punitive damages, if permitted, under Title VII;

E. Awarding Navarro attorneys' fees and costs;

F. Awarding Navarro pre- and post-judgment interest as provided by law; and

G. Awarding Navarro any other relief to which he is entitled and/or which this Court deems necessary and proper.

Dated this 16th day of July, 2025.

          Respectfully submitted,

          s/ Richard Siwica
          Richard Siwica
          FL Bar No. 377341
          EGAN, LEV & SIWICA, P.A.
          231 East Colonial Drive
          Post Office Box 2231
          Orlando, FL 32802-2231
          rsiwica@eganlev.com

          s/ Sammy Y. Sugiura
          Sammy Y. Sugiura
          (*pending pro hac vice admission*)
          MOONEY, GREEN, SAINDON, MURPHY & WELCH, P.C.
          1620 Eye Street, NW, STE 700
          Washington, DC 20006
          ssugiura@mooneygreen.com

          *COUNSEL FOR PLAINTIFF*